UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JONATHAN WILLIAMS

      Petitioner,

v.                              Case No. 8:03-cv-2686-T-23TBM

SECRETARY, Department of Corrections,

      Respondent.
_____/

### O R D E R

    Jonathan Williams petitions for the writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 (Doc. 1) and challenges the validity of his state conviction for armed robbery.[1]

Williams alleges denial of his right to both a fair trial and the effective assistance of trial

and appellate counsel.  Numerous exhibits ("Respondent's Exhibit __") support the

response (Doc. 15).

    A jury convicted Williams and his codefendant, Demone Rushing[2], of armed

robbery.  The state appellate court affirmed Williams's conviction and sentence in a per

curiam decision without a written opinion.  Williams's subsequent challenges to his

---

[1] Williams was charged in a two-count information with armed robbery and felonious possession of firearms (Respondent's Exhibit 7, Vol. I, at 6-7).  Williams succeeded in severing the armed robbery count. Williams and his co-defendant, Demone Rushing, were tried jointly and both were found guilty of armed robbery.  Williams was tried and convicted in a separate trial for felonious possession of firearms.  Williams challenged his conviction for felonious possession of firearms in a separate Section 2254 petition which was denied.  See Williams v. Secretary, Department of Corrections, et al., Case No. 8:03-cv-2690-T-30-MSS.

[2] Terry Williams, who was the third defendant and Jonathan Williams's brother, pleaded guilty to armed robbery (Respondent's Exhibit 7, Vol. III at 172).

convictions – a state Rule 3.850 motion and a state petition for the writ of habeas

corpus – were denied.  Williams's Section 2254 petition followed.

## PROCEDURAL DEFAULT

**Grounds Two, Three, Four and Six**

The respondent correctly argues that grounds two, three, four and six are both

unexhausted and procedurally barred.  In ground two, Williams alleges the trial court

erred by denying his motion for mistrial and by allowing the state to argue improperly in

closing.  In ground three, Williams alleges the trial court erred by denying his motion for

judgment of acquittal.  In ground four, Williams contends the trial court erred by allowing

the state to introduce inadmissible hearsay evidence.  In ground six, Williams alleges

the trial court erred by allowing the state to introduce a photograph of Williams.  Each

claim was raised and rejected on direct appeal (Respondent's Exhibits 1 and 3).

Although presenting each claim in state court, Williams presented each claim in state

law terms only and failed, in each instance, to preserve any alleged violation of a federal

constitutional right.

Federal habeas relief for a person in custody pursuant to the judgment of a state

court is available only on the ground that the custody violates the Constitution, laws, or

treaties of the United States.  28 U.S.C. § 2254(a); Jones v. Goodwin, 982 F.2d 464,

471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990).  A state's

interpretation of its own laws or rules provides no basis for federal habeas corpus relief

because no federal constitutional question is presented.  28 U.S.C. § 2254(a); Estelle v.

McGuire, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")

As a prerequisite to habeas relief, a federal habeas petitioner must exhaust, either on direct appeal or in a state post-conviction motion, each state court mechanism available to challenge his conviction.  28 U.S.C. § 2254(b)(1)(A), (c); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. at 842.  See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  Pruitt v. Jones, 348 F.3d 1355, 1358 (11th Cir. 2003).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  Pruitt v. Jones, 348 F.3d at 1358-59 (quoting O'Sullivan v. Boerckel, 526 U.S. at 845).

To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief and the facts supporting the claim.  Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004).  A petitioner must present his claim to the

state court so that the state court has the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Kelley v. Sec'y for Dep't of Corr., 377 F.3d at 1344 (quoting Picard v. Connor, 404 U.S. 270, 277 (1971)).  See also Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  Kelley v. Sec'y for Dep't of Corr., 377 F.3d at 1344.

Williams failed to present the federal component of grounds two, three, four and six to the state court on direct appeal.  Consequently, he deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. at 845.  A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy.  Snowden v. Singletary, 135 F.3d at 735.  Williams's exclusively state-law arguments presented on direct appeal leave the federal constitutional claim unexhausted.  Duncan v. Henry, 513 U.S. at 365.  See also Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the

claim 'federal.'").  Grounds two, three, four and six remain unexhausted and, therefore, elude federal review.

Neither can Williams belatedly return to state court to present his federal claims. Williams was precluded from asserting his federal claim in a Rule 3.850 motion because he could have raised the claim on direct appeal.  See e.g., Childers v. State, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("The law is clear that where an issue could have been raised on direct appeal, it is not the proper subject for a Rule 3.850 motion.") (citations omitted).  The state's rule precluding second or successive Rule 3.850 motions bars Williams's returning to state court to present a second Rule 3.850 motion.  See Fla. R. Crim. P. 3.850(b).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."  Smith v. Jones, 256 F.3d at 1138.  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).  See also Murray v. Carrier, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of

constitutional dimensions.  United States v. Frady, 456 U.S. 152 (1982).  In other words, he must show at least a reasonable probability of a different outcome.  Henderson v. Campbell, 353 F.3d at 892; Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Murray v. Carrier, 477 U.S. at 495-96; Henderson v. Campbell, 353 F.3d at 892.  "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent."  Henderson v. Campbell, 353 F.3d at 892.  This exception requires a petitioner's "actual" innocence.  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.  Schlup v. Delo, 513 U.S. 298, 327 (1995).

Williams fails to demonstrate cause and prejudice excusing his default.  Williams has neither alleged nor shown that the fundamental miscarriage of justice exception applies.  Because Williams fails to proffer specific facts showing an exception to procedural default, Hill v. Jones, 81 F.3d 1015 (11th Cir. 1996), grounds two, three, four and six are procedurally barred from federal review.[3]

---

[3] To the extent these claims might allege a federal due process violation, no relief is warranted.  The limitation on federal habeas review to claims of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation.  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976).

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the

"unreasonable application" clause, a federal habeas court may grant the
writ if the state court identifies the correct governing legal principle from
this Court's decisions but unreasonably applies that principle to the facts
of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272

F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the

correctness per se, of the state court decision that we are to decide.").

Williams's conviction and sentence were affirmed on direct appeal in a per

curiam decision without a written opinion (Respondent's Exhibit 4), and the denial of his

subsequent Rule 3.850 motion for post-conviction relief was likewise affirmed on appeal

in another per curiam decision without a written opinion (Respondent's Exhibit 11).  The

state appellate court's per curiam affirmances warrant deference under Section

2254(d)(1) because "the summary nature of a state court's decision does not lessen the

deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and

reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby,

538 U.S. 906 (2003).

Williams has the burden of overcoming a state court factual determination by

clear and convincing evidence.  "[A] determination of a factual issue made by a State

court shall be presumed to be correct.  The applicant shall have the burden of rebutting

the presumption of correctness by clear and convincing evidence."  28 U.S.C.

§ 2254(e)(1).  This presumption of correctness applies only to a finding of fact, not a

mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.),

cert. denied, 534 U.S. 1046 (2001).  Consequently, a presumption of correctness

attaches to the finding of facts in the trial court's rejection of Williams's post-conviction

claims of ineffective assistance of counsel (Respondent's Exhibit 9).

## FACTS[4]

While conducting surveillance operations, officers of the Saint Petersburg Police

Department observed three individuals, later identified as Jonathan Williams, Terry

Williams and Demone Rushing, riding in a car driven by Rushing.  After about an hour

of surveillance, Williams and the codefendants stopped at the Karry Outs Cafe.  The

Williams brothers entered the Karry Outs Cafe wearing masks and carrying weapons

while Rushing remained in the vehicle.  Officers observed the Williams brothers exit the

Karry Outs Cafe, with Jonathan Williams carrying a firearm and a cash register drawer.

The Williams brothers returned to the vehicle driven by Rushing to whom they yelled

"go."  While attempting to leave the scene, Rushing backed the vehicle into a tree, after

which police apprehended Rushing and the Williams brothers.

## TRIAL COURT ERROR

**Ground One[5]**

Williams contends that the trial court violated his Sixth Amendment right of

confrontation by admitting co-defendant Rushing's hearsay statements.  The

Confrontation Clause of the Sixth Amendment provides that an accused in a criminal

case has the right to "be confronted with [the] witnesses against him."  U.S. Const.

---

[4] This summary of the facts derives from Williams's brief on direct appeal (Respondent's Exhibit 1).

[5] As support for the claims presented in grounds one through six of his federal habeas petition, Williams relies upon the "facts, arguments and citations to legal authorities" presented in his initial brief on direct appeal.

amend. IV.  In Bruton v. United States, 391 U.S. 123 (1968), "the Supreme Court held that post-arrest statements made by non-testifying co-defendants that facially incriminate a defendant are inadmissible because such statements violate the defendant's Sixth Amendment right to cross-examine adverse witnesses." Garcia v. United States, 278 F.3d 1210, 1214 (11th Cir. 2002).  Only statements by a non-testifying defendant that directly inculpate a co-defendant violate the constitution. United States v. Veltmann, 6 F.3d 1483, 1500 (11th Cir. 1993) (citations omitted).

The harmless error rule of Chapman v. California, 386 U.S. 18 (1967), applies to Bruton violations.  Schneble v. Florida, 405 U.S. 427 (1972).  "[A] defendant is entitled to a fair trial but not a perfect one." Bruton v. United States, 391 U.S. at 135.  "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." Schneble v. Florida, 405 U.S. at 430.  "Thus, unless there is a reasonable probability that the improperly admitted evidence contributed to the conviction, reversal is not required." Schneble v. Florida, 405 U.S. at 432.

Williams points to two specific portions of the trial transcript to support his allegation.  First, Williams refers to testimony by Detective Steve Corbet, an officer with the City of Saint Petersburg Police Department, who responded to the scene of the robbery.  On direct examination, the prosecutor questioned Det. Corbet regarding statements made to Det. Corbet by codefendant Rushing as follows:

PROSECUTOR:  Number one, did you ask [Rushing] what it was, if anything, he heard either Terry Williams or Jonathan Williams say as they ran back to the vehicle where he was parked near the Karry Outs Café?

CORBET:  Yes, I did.

DEFENSE COUNSEL:  Objection.  May we approach?

(Bench conference)

DEFENSE COUNSEL:  I want to raise the same objection I made.  We're probably back with Judge Luce[6] on that original motion and argument on the joinder of these defendants and on the issues specifically of the statements of co-defendant Rushing coming in at trial with my client Mr. Williams.

The questions and testimony that you're going to hear, the jury is going to hear, will be along the lines of that he observed Demone Rushing t[ell] this detective that he observed my client in possession of a cash tray when he returned to the car.  And, number two, both defendants told him to drive fast and get out of there, in other words, as soon as they returned to the car.

THE COURT:  Okay.  Do you have the transcript?

PROSECUTOR:  The transcript of what?

THE COURT:  The ruling.  I was told it was a ruling or observation which Judge Luce made.  Didn't we have this conversation previously?

DEFENSE COUNSEL:  Let me clarify.  Judge Luce made a ruling and he characterized it by saying the observations of Demone Rushing as told to this detective could come into testimony at this trial with my client joined as co-defendant.

I, of course, objected and object to this.  Because I think it puts my client in a situation where, first of all, he did not give any statement to the detectives at the time and it puts us in basically a prudent situation where we're in a problem.

THE COURT:  What was the basis of the ruling?

---

[6] Judge Richard Luce conducted a hearing and granted the state's motion to consolidate.  Judge Philip Federico conducted Williams's trial.

PROSECUTOR:  Exactly what is my understanding, exactly as [defense counsel] articulated.

THE COURT:  No, no.  what's the underpinning, the legal reason for the ruling?  Why does it violate his right to confrontation?

PROSECUTOR:  My understanding is it's an admission by Mr. Rushing as to his guilty knowledge rather than an implication as to Mr. Williams. I put out to the Court, Judge, there's already been testimony in the matter from the investigating [d]etectives . . . that they observed the Defendant Jonathan Williams running down the alley with the cash drawer.  That's the observation and that's the observation of [two eyewitnesses].

DEFENSE COUNSEL:  I don't know you need a response but that, you know, doesn't address the underlying prudent problem.

PROSECUTOR:  If this Court is going to reverse the prior ruling, that's fine.

THE COURT:  No.  I'm trying to understand the legal basis.

DEFENSE COUNSEL:  I don't know other than maybe Judge Luce looked at this under the category of sort of a physical description of an event, but frankly in my humble opinion that doesn't address that Court's issue again.

PROSECUTOR:  My only question complies with the prior ruling of the Court.  I made the argument out I have to make.

THE COURT:  That doesn't help me as far as principal after the fact because the crime is completed at that point.  You're mucking up a record that doesn't need to be mucked up for any reason.  That's the prior ruling. It's the prior ruling.  I'll stick with it.

I didn't give that as a prior ruling but if it was to try and show he had knowledge before the crime, you're taking a chance with possible prudent statement and whether it's admissible after the fact is decided already so, I'll stick with the prior ruling and overrule the objection.  Proceed.  Thank you.

(Respondent's Exhibit 7, Vol. IV at 232-35).  Following this exchange, the prosecutor

elicited that Rushing told Det. Corbet that Williams and his brother "yelled 'go'" as they

ran back to the vehicle.

Williams also relies upon the following exchange on cross-examination between

Det. Corbet and codefendant Rushing's counsel about Det. Corbet's meeting with

Rushing on the night of the robbery:

> CODEFENDANT'S COUNSEL:  You're not telling us that the questions you responded to the State were the only two questions you asked.
>
> PROSECUTOR:  Can we approach?
>
> THE COURT:  Approach.
>
> (Bench conference)
>
> THE COURT:  Where are you going with that?
>
> CODEFENDANT'S COUNSEL:  I want to go with the rest of the interview. [The prosecutor] tried to get in the bad part but that's part of the whole interview.  He can't take out part and shut the door on the rest of it.
>
> THE COURT:  Are you going to say he might implicate Mr. Williams?
>
> CODEFENDANT'S COUNSEL:  I'm not going to touch Mr. Williams.
>
> PROSECUTOR:  Judge, it's outside, first of all, I didn't ask him about any statements that he made other than what the observations that he made were.  That's prior ruling by the Court.  It does not in and of itself avoid all the rest.  It opens the door to the whole same attempt to elicit exculpatory hearsay.
>
> THE COURT:  It's a rule of completeness.  If you ask him about a portion, some portion of exculpatory evidence, it all would be admissible.  The only reason it wouldn't be is if you implicated the co-defendant.  And you can follow up as far as Jonathan Williams is concerned.
>
> CODEFENDANT'S COUNSEL:  I'll stay away from that.
>
> PROSECUTOR:  Judge, I find myself in the same position that the Court seems to find itself.  On this matter before the prior presiding judge in the matter, that's his ruling, that's my understanding.  I can conduct my examination accordingly.  Had I understood we were going to revisit the prior ruling I would have reconsidere[d] the testimony.  I understand the

Court's position as well.  You did that, you take a chance, but I did that with the ruling Judge Luce gave us previously.

THE COURT:  The rule doesn't apply to completeness as far as inconsistent statements are concerned.

CODEFENDANT'S COUNSEL:  I don't know [sic] he addressed the balance of the interview.  He said he made these statements during the interview.  Why can't I do the rest?

THE COURT:  I don't know if that was the scope of the ruling or not since no one produced it for me but I have to understand what the basic law is for completeness and you can go into it and it doesn't relate to [Jonathan Williams's] involvement.  So you can go into it.  Proceed.

(Bench conference terminated).

CODEFENDANT'S COUNSEL:  Detective Corbet, when you were interviewing Mr. Rushing he told you that night they were driving around looking for girls, correct?

CORBET:  That's correct.

PROSECUTOR:  Judge, I object as to the form in view of the Court's ruling.

THE COURT:  Overruled.  Proceed, counselor.

CODEFENDANT'S COUNSEL:  And he told you that while they were looking for girls he kind of got hungry and they went to [a] pizza place, right?

CORBET:  Yes, sir.

CODEFENDANT'S COUNSEL:  And he didn't tell you he was the one that chose the pizza place, did he?

CORBET:  That is correct.

CODEFENDANT'S COUNSEL:  He told you he waited in the car while the others went to get something to eat, correct?

CORBET:  Yes, Sir.

CODEFENDANT'S COUNSEL:  And he wasn't told whether or not to leave the engine running or turned off or anything else, did he?

CORBET:  No.

CODEFENDANT'S COUNSEL:  And he told you he was from out of town; is that right?

CORBET:  Yes, sir.

CODEFENDANT'S COUNSEL:  And he told you he did not see any guns, correct?

CORBET:  That is correct.

CODEFENDANT'S COUNSEL:  In fact, he told you that he told the other occupant[7] more than once that he was hungry, right?

CORBET:  Yes, he did.

CODEFENDANT'S COUNSEL:  And he also questioned the other occupants of the car about where they were going to go to get girls, correct?

CORBET:  Yes, he did.

CODEFENDANT'S COUNSEL:  And that he was directed by someone else to the ultimate location, correct?

CORBET:  Yes, sir.

CODEFENDANT'S COUNSEL:  That's all I have.  Thank you.

(Respondent's Exhibit 7, Vol. IV at 228, 238-42).

The properly admitted evidence of Williams's guilt elicited from other witnesses overwhelms any arguable Bruton error.  The police surveilled Williams and his codefendants before Williams and his codefendants' arrival at the Karry Outs Café (Respondent's Exhibit 7, Vol. III at 85, 94-97, 154-55; Vol. IV at 220).  Detective James

---

[7] The three occupants of the vehicle were Jonathan Williams, Terry Williams and Demone Rushing.

Culberson of the City of Saint Petersburg Police Department testified that he observed Williams exit the Karry Outs Café holding the cash register drawer and a gun and that Williams ran directly past Det. Culberson.  (Respondent's Exhibit 7, Vol. III at 97, 102).  Also, Detective Steve Mandakis of the City of Saint Petersburg Police Department testified that he observed (1) Williams return to an alley after entering the Karry Outs Café and (2) Williams carry what appeared to be a cash drawer (Respondent's Exhibit 7, Vol. III at 159).  Williams's brother, codefendant Terry Williams, testified that Jonathan Williams participated in the robbery and carried a firearm (respondent's Exhibit 7, Vol. III at 178).  Accordingly, any erroneous admission of Rushing's statements was harmless beyond a reasonable doubt and this claim warrants no federal habeas relief.  See Schneble v. Florida, 405 U.S. at 430, 432.

**Ground Five**

Williams alleges that the trial court erred by denying his motion for mistrial based on the state's improper comment on Williams's right to remain silent.  This claim was raised and rejected on direct appeal (Respondent's Exhibit 1 at 42-46; Exhibit 4).

Williams points to the following testimony[8] of Officer Kevin Kenyon on direct examination:

> PROSECUTOR:  Could you describe where [Jonathan Williams] was when you arrived?
>
> KENYON:  Mr. Williams was on the ground being detained by one of the detectives already on the scene.  So I basically assisted them and handcuffed him.

---

[8] On direct appeal (Respondent's Exhibit 1 at 42-43), Williams presented this excerpt of the trial transcript as the basis for his claim of trial court error.

. . .

PROSECUTOR:  Did you then transport him at any point to the St. Petersburg Police Department?

KENYON:  Yes, I did.

. . .

PROSECUTOR:  When you transferred him to the St. Pete[rsburg] Police Department where did you take the defendant when you arrived?

KENYON:  I took him up to the second floor, detectives' interview room.

PROSECUTOR:  Did you interview him that evening?

KENYON:  No, I did not.

. . .

(Bench conference at the conclusion of state's direct examination)

DEFENSE COUNSEL:  Judge, I would just make a motion for a mistrial based on an incorrect comment on the client's right to remain silent.  You heard, I know he did not ask him directly did he make any statements, did he refuse to talk, did he request an attorney, anything of that nature, but they did talk about [the] interview room and, in fact, no interview occurred.

PROSECUTOR:  No.  We didn't say no interview occurred.

THE COURT:  So you brought that out on the hopes he would mention something that would declare a mistrial?  Is there anything additional?

CODEFENDANT'S COUNSEL:  No.

THE COURT:  There's nothing here as far as that necessitates requiring a mistrial.  There's no indication of any statement.  I'll deny the motion for mistrial.  Thank you.

(Respondent's Exhibit 1 at 42-43; Exhibit 7, Vol. IV at 218-19).

Williams relies on Doyle v. Ohio, 426 U.S. 610 (1976), to support his contention

that the trial court's denying his motion for mistrial resulted in prejudicial error requiring

a new trial. <u>Doyle</u> holds "that the use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving <u>Miranda</u>[9] warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." <u>Doyle v. Ohio</u>, 426 U.S. at 619. The harmless error standard "for determining whether a conviction must be set aside on collateral review because of <u>Doyle</u> violations or other 'constitutional error of the trial type'", <u>Hill v. Turpin</u>, 135 F.3d 1411, 1416 (11th Cir. 1998), is whether the <u>Doyle</u> violation "had a substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993) (<u>quoting</u> <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)). Application of this standard requires evaluation of the error in the context of the entire record. <u>Hill v. Turpin</u>, 135 F.3d at 1416.

Officer Kenyon's testimony described his limited role in Williams's arrest (Respondent's Exhibit 7, Vol. IV at 213-18). Considered in context, Kenyon's testimony is not an improper comment on Williams's right to remain silent. Showing only that Kenyon himself did not interview Williams at the police station, Kenyon's testimony neither implicitly nor explicitly states that no other officer interviewed Williams or that Williams refused to respond to questions posed by Kenyon. This single statement by Kenyon that he did not interview Williams was brief and isolated. Given the other evidence adduced at trial and the brevity of this allusion to Williams's silence, Kenyon's statement caused no substantial and injurious effect on the jury's verdict. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. at 623. Williams fails to meet his burden of proving that the

---

[9] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

state court unreasonably applied controlling Supreme Court precedent or unreasonably

determined the facts.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Williams claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d

1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th

Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled
> and well documented.  In Strickland v. Washington, 466 U.S. 668, 104
> S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part
> test for analyzing ineffective assistance of counsel claims.  According to
> Strickland, first, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.Ct.
> 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent

prejudice.  Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court

deciding an ineffective assistance claim . . . to address both components of the inquiry if

the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at

1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on

either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690.  Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Williams must demonstrate that counsel's error prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92.  To meet this burden, Williams must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91.  Williams cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask

> only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

As stated above, Williams must prove that the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

**Ground Seven**

Williams alleges that his trial counsel rendered ineffective assistance by failing to object to the admission of "surveillance testimony" by Detective James Culberson.  The state court rejected this claim as follows:

> Defendant alleges that counsel was ineffective for failing "to object to inadmissible surveillance testimony by Detective Culberson that was beyond the trial court's ruling."  First, the record does not demonstrate the court ruled that Detective Culberson's testimony would be limited in regard to his surveillance of Defendant.  Further, the record is clear that counsel did object to Detective Culberson's testimony regarding his overall

> surveillance of Defendant.  The Court finds the record conclusively refutes
> Defendant's allegations and this claim is denied.

(Respondent's Exhibit 8) (court's citations to exhibits omitted).  To obtain relief on

ground seven, Williams must establish that the state court unreasonably applied

Strickland or unreasonably determined the facts in denying Williams's Rule 3.850

motion.

Williams presents no evidence of entitlement to relief.  See Hill v. Lockhart, 474

U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are

insufficient to raise a constitutional issue); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th

Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective

assistance of counsel claim).  The record shows trial counsel objected to Det.

Culberson's testimony and supports the state court's denying this claim.  Williams fails

to demonstrate that counsel's performance was outside the bounds of reasonable

professional judgment.  Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir.

2000) (en banc), cert. denied, 531 U.S. 1204 (2001) (counsel is not deemed

incompetent for performing in a particular way as long as the approach taken "might be

considered sound trial strategy") (quoting Darden v. Wainwright, 477 U.S. 168 (1986)).

Williams fails to meet his burden of proving that the state court unreasonably applied

controlling Supreme Court precedent or unreasonably determined the facts.

**Ground Eleven**

Williams contends his appellate counsel rendered ineffective assistance by failing

to present a claim of ineffective assistance of trial counsel based on two alleged errors

by trial counsel.  First, Williams claims that trial counsel improperly waived Williams's

right to a speedy trial.  Second, Williams claims that trial counsel "tainted" Williams's right to a fair trial.  Williams contends both of these errors were apparent on the face of the record.  Williams presented this ineffective assistance of appellate claim in his state petition for the writ of habeas corpus (Respondent's Exhibit 15).  The state appellate court denied the petition (Respondent's Exhibit 20) without discussion.

In Florida, a defendant cannot raise an ineffective assistance of trial counsel claim on direct appeal if the claim was not presented to the trial court.  State v. Barber, 301 So.2d 7 (Fla. 1974).  "There are rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue."  Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla. 1987) (citations omitted).  To show entitlement to relief, Williams must demonstrate that appellate counsel performed deficiently and that the deficient performance resulted in prejudice.  Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), cert. denied, 502 U.S. 1077 (1992).  To demonstrate prejudice, Williams must establish a reasonable probability of success on appeal of his underlying claims of ineffective assistance of trial counsel.  See Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Heath v. Jones, 941 F.2d at 1132.

In his first allegation, Williams claims trial counsel improperly waived his right to a speedy trial[10] by moving to continue the case following counsel's appointment.[11]

_____

[10] Florida's speedy trial rule provides that a defendant charged with a felony shall be brought to trial within 175 days of arrest.  Fla. R. Crim. P. 3.191(a).  The speedy trial period commences when a person is taken into custody.  Fla. R. Crim. P. 3.191(a).  A person is taken into custody when he is arrested as a result of the conduct or criminal episode that gave rise to the crime charged.  Fla. R. Crim. P. 3.191(d).

[11] The trial court granted the public defender's motion to withdraw as counsel (Respondent's Exhibit 7, Vol. I at 9) and appointed new counsel to represent Williams (Respondent's Exhibit 7, Vol. I at 11).

Williams contends this waiver prejudiced him "as the state's case was complex even though the defense's [case] was not.  Counsel's waiver with only seventy-nine (79) days remaining to try [Williams] allowed the state ample time to prepare which would not have otherwise been available."

"[W]hen a defendant requests a continuance prior to the expiration of the applicable speedy trial time period for the crime with which he is charged, the defendant waives his speedy trial right as to all charges which emanate from the same criminal episode."  Stewart v. State, 491 So.2d 271, 272 (Fla. 1986) (citations omitted).  Any defense request to postpone a case for any time constitutes a motion for a continuance waiving speedy trial rights.  Blackstock v. Newman, 461 So.2d 1021, 1022 (Fla. 3d DCA 1985).  "The speedy trial rule is a procedural device only and not a constitutional right.  Once the speedy trial rule has been waived, it is supplanted by the constitutional speedy trial period which is measured by tests of reasonableness and prejudice, not specific number of days."  Blackstock v. Newman, 461 So.2d at 1022 (citations omitted).

The record shows that the trial court granted (Respondent's Exhibit 7, Vol. I at 18) trial counsel's motion to continue (Respondent's Exhibit 7, Vol. I at 15) in which Williams explicitly waived his right to a speedy trial.  Even absent this explicit waiver, Williams's motion to continue operated as a waiver of his right to a speedy trial.  Stewart v. State, 491 So.2d at 272; Blackstock v. Newman, 461 So.2d at 1022.  Williams neither disputes the validity of this waiver nor shows that an unreasonable delay in the commencement of trial resulted in prejudice.  See Blackstock v. Newman, 461 So.2d at 1022.  Consequently, Williams's underlying claim of ineffective assistance of trial

counsel on this ground lacks merit.  Williams fails to establish that appellate counsel rendered ineffective assistance by failing to raise this non-meritorious claim on appeal. The state appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, the Strickland standard.

In his second allegation, Williams contends appellate counsel rendered ineffective assistance by failing to challenge trial counsel's failure to object to "blame-shifting" by both the state and Rushing's counsel.  Williams refers to the trial court's "proviso," mentioned at the hearing on the state's motion to consolidate, to support his contention that trial counsel rendered ineffective assistance."[12]  Williams's generalized assertion of "blame-shifting" by the state appears to refer to the portion of Det. Corbet's testimony that Rushing told Det. Corbet that Williams and his brother "yelled 'go'" as they ran back to the vehicle following the robbery.  See discussion of ground one.

---

[12] At the hearing, the trial court stated the following:

THE COURT: All right.  The Court has reviewed the facts.  The Court has reviewed the cases cited and with the proviso that the State will not be seeking to introduce in their case and [sic] chief admissions implicating Mr. Williams, the Court makes a finding that the motion to consolidate should be granted. . . .

. . .

THE COURT [to Williams's trial counsel]: Mr. Holloway, I ruled earlier this morning on the motion to consolidate and the motion to consolidate was granted with the proviso that the State in their direct case would not utilize any incriminating statements.

Incriminating statement in my view would be one where the individual would say we were in it together or it was his idea, or something like that.  In the event, and I'm not saying that we're even going to try and do this, but in the event an individual made an observation such as he came up to the car with a bag of money, that is an observation and that's the same type of observation that would be made by police officers that were in the immediate vicinity.  So I don't regard that as a, quote, incriminating statement, as a co-conspirator, just as an observer. . . .

(Respondent's Exhibit 16).

Contrary to Williams's assertion, the record shows trial counsel objected to the prosecutor's question.  Appellate counsel had no basis upon which to raise this claim of ineffective assistance of trial counsel because no ineffectiveness is apparent on the record.

Williams shows no entitlement to relief on his claim that his codefendant's counsel engaged in "illegal blame-shifting in contravention of the trial court's consolidation 'proviso.'"  The instruction or "proviso" had no bearing upon the conduct of codefendant's counsel.  The trial court's ruling referred specifically to the state's ability to introduce incriminating statements against Williams in its case-in-chief and not to the codefendant's trial strategy.

Williams fails to show that, absent these alleged errors by trial counsel, the jury would have acquitted him.  Williams cannot establish his underlying claims of ineffective assistance of trial counsel and, consequently, cannot satisfy the <u>Strickland</u> standard on his claim of ineffective assistance of appellate counsel.  Williams fails to establish that the state appellate court's denying this claim was either contrary to or an unreasonable application of <u>Strickland</u> or resulted in a decision that is based on an unreasonable determination of the facts.

**Ground Twelve**

Williams contends that his appellate counsel rendered ineffective assistance by failing to challenge the trial court's alleged failure to place the venire under oath before conducting <u>voir</u> <u>dire</u>.[13]  This claim was raised and rejected by the state appellate court in Williams's state habeas petition (Respondent's Exhibits 16 and 20).

---

[13] Rule 3.300, Florida Rules of Criminal Procedure, states that "the prospective jurors shall be sworn collectively or individually, as the court may decide."  Fla. R. Crim. P. 3.300(a).

Williams neither offers factual or legal support for his claim, nor cites to a portion of the record to demonstrate the alleged trial court error.  The record fails to indicate whether the venire was sworn before voir dire because that portion of the trial was not transcribed (Respondent's Exhibit 7, Vol. III at 13).  However, in Florida, "it is a common practice to obtain oaths from the venire outside the courtroom."  Martin v. State, 898 So.2d 1036, 1037 (Fla. 5th DCA 2005); Hayes v. State, 855 So.2d 144 (Fla. 4th DCA 2003).  In light of this practice and absent evidence to affirmatively establish his allegation, Williams's claim that the trial court failed to place the venire under oath is speculative.  Trial counsel did not object during the trial to a failure to give the oath, resulting in a waiver of the objection.  Bolin v. State, 869 So.2d 1196, 1202 (Fla. 2004) ("Although the record does not indicate whether the venire was sworn, defense counsel did not object at any point during the trial to a failure to give the oath to the venire and thus waived any objection.").

Appellate counsel is not deemed ineffective for failing to raise issues unpreserved for appeal.  Medina v. Dugger, 586 So.2d 317, 318 (Fla. 1991).  An exception exists if appellate counsel fails to raise a claim, although not preserved for appeal, that presents a fundamental error.  A fundamental error is an error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  Kilgore v. State, 688 So.2d 895, 898 (Fla. 1996) (citations omitted).  "Where, as here, there is simply no record one way or the other [that the venire was unsworn], no error, let alone fundamental error, has been shown."  Smith v. State, 866 So.2d 51, 64 (Fla. 2004).  See also United States

v. Pinero, 948 F.2d 698, 700 (11th Cir. 1991) ("The mere absence of an affirmative statement in the record [that the jury was not sworn] . . . is not enough to establish that the jury was not in fact sworn.").

Williams fails to establish fundamental error.  Accordingly, Williams fails to show his appellate counsel was ineffective for failing to raise this unpreserved issue on appeal and no federal habeas relief is warranted.

## **MOTION TO CONSOLIDATE**

Before trial, the state moved to consolidate the armed robbery trials of Williams and Rushing.  Williams presents three separate claims of ineffective assistance of counsel based on the motion to consolidate.

**Ground Eight**

Williams alleges that his trial counsel rendered ineffective assistance by failing to object to the state's motion for consolidation (Respondent's Exhibit 7, Vol. I at 22-23) of Williams's trial with co-defendant Rushing's trial.  The state court rejected this claim as follows:

> Defendant contends that counsel failed to object to the State's motion to consolidate and this failure to object resulted in prejudicial testimony, that concerned only the co-defendants, being presented for the jury's consideration.  The record demonstrates that counsel did object to the motion to consolidate, but the Court granted the motion with directions on what evidence/testimony would be permitted.  The Court finds the Defendant has not proven that counsel's performance was deficient and this claim is denied.

(Respondent's Exhibit 9) (court's citations to exhibits omitted).

The record supports the trial court's denying this claim.[14]  Williams fails to establish that the trial court's denying this claim was either contrary to or an unreasonable application of Strickland or resulted in a decision that is based on an unreasonable determination of the facts.

**Ground Nine**

Williams contends that his appellate attorney rendered ineffective assistance by failing to raise as fundamental error Williams's involuntary absence at a pre-trial hearing on the state's motion to consolidate.  Williams presented this claim in his state petition for the writ of habeas corpus (Respondent's Exhibit 15).  The state appellate court denied the petition (Respondent's Exhibit 20) without discussion.

Strickland governs also an ineffective assistance of appellate counsel claim. Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), cert. denied, 502 U.S. 1077 (1992); Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla. 1985) (the criteria for proving ineffective assistance of appellate counsel parallel the Strickland standard).  To establish a claim of ineffective assistance of appellate counsel, a habeas petitioner must show that appellate counsel performed deficiently and that the deficient performance resulted in prejudice.  To demonstrate deficient performance, Williams must show that

---

[14] The trial transcript supports the state court's finding that trial counsel objected to the motion to consolidate.

> DEFENSE COUNSEL: I took notes on [the motion to consolidate].  Obviously there was no written order or discussion on [the] transcript.  Judge Luce granted the State's motion over our objection and he indicated though that certain of the co-defendants['] statements would be permitted and he characterized these in so ruling as observations.

(Respondent's Exhibit 7, Vol. III at 9-10).  Aside from this excerpt, the record contains no evidence of a previous oral or written objection by trial counsel to the motion to consolidate.  The state court relied upon this excerpt of the transcript in denying this claim of Williams's Rule 3.850 motion.

appellate counsel's failure to raise the claim of trial court error was outside the range of professionally acceptable performance.  Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000), cert. denied, 531 U.S. 1204 (2001).  To demonstrate prejudice, Williams must show that appellate counsel's deficient performance undermines confidence in the correctness of the result.  Chandler v. United States, 218 F.3d at 1312-14; Wellington v. United States, 314 F.3d 1256, 1260 (11th Cir. 2002).

"[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to the fairness of the procedure."  Kentucky v. Stincer, 482 U.S. 730 (1987).  See also Garcia v. State, 492 So.2d 360 (Fla. 1986); Fla. R. Crim. P. 3.180(a)).[15]  "However, the right 'does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed.'" Orme v. State, 896 So.2d 725, 738 (Fla. 2005) (quoting United States v. Vasquez, 732 F.2d 846, 848 (11th. Cir. 1984)).  Williams's exclusion from the motion to consolidate hearing could have violated Stincer if Williams's presence would have contributed to the fairness of the hearing, but under Strickland, Williams must prove more.  Diaz v. Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005).  To obtain relief on this claim of ineffective assistance of appellate counsel, Williams must have suffered prejudice to the level required by Strickland.

---

[15] Florida law provides "that a defendant shall be present at first appearance; any pretrial conferences, unless [the defendant] waives his presence in writing; during the examination, challenging, impaneling, and swearing of the jury; and at all proceedings before the court when the jury is present."  Wike v. State, 813 So.2d 12, 19 (Fla. 2002); Fla. R. Crim. P. 3.180(a).

"Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument." Diaz v. Dep't of Corrs., 402 F.3d at 1142.  Trial counsel failed to object to Williams's absence from the hearing, thus not preserving the issue for appeal.  Diaz v. Dep't of Corrs., 402 F.3d at 1142.  Williams fails to explain how his presence at the hearing would have contributed to its fairness.  See Orme v. State, 896 So.2d at 738 (concluding that the defendant failed to show prejudice from his absence because he "has not shown that anything discussed during the bench conferences required his consultation").  Consequently, Williams cannot demonstrate prejudice and this claim of ineffective assistance fails.

**Ground Ten**

Williams contends that his appellate counsel rendered ineffective assistance by failing to challenge the trial court's granting the state's motion to consolidate.  Williams relies upon the use of Rushing's statements through Detective Corbet and the closing arguments of both the state and Rushing's counsel to support his claim.  Such reliance is misplaced because the motion to consolidate was a pretrial motion.  The facts Williams suggests evince error in granting the motion to consolidate were not before the trial court at the time of the hearing on the motion to consolidate.  Williams fails to demonstrate prejudice as a result of appellate counsel's alleged error.  In the absence of an allegation of prejudice, a claim of ineffective assistance of counsel cannot succeed because the requirements of Strickland remain unsatisfied.  Williams is not entitled to federal habeas relief on this claim.

Accordingly, Williams's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

The clerk shall enter a judgment against Williams and close this action.

ORDERED in Tampa, Florida, on October 15, 2007.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE